## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

|  |  |
|---|---|
| Jeremy Paul Batts and Susan Beth Batts as Co-Personal Representatives of the Estate of Kaiea Spring Batts, Deceased, | Civil Action No. 2:23-cv-03565-DCN |
| Plaintiff, | **DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT AND MEMORANDUM IN SUPPORT** |
| vs. | |
| SNAP INC. d/b/a SNAPCHAT, INC., Evan Spiegel and Emily White, | **[Fed. R. Civ. P. 12(b)(2)]** **[Fed. R. Civ. P. 12(b)(6)]** |
| Defendants. | |

Defendants Snap Inc. ("Snap"), Evan Spiegel ("Spiegel"), and Emily White ("White") (collectively, "Defendants") move, per Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6) for dismissal of the amended complaint (Dkt. No. 32-1, "Amended Complaint" or "Compl.") because this Court lacks personal jurisdiction over any of the Defendants and because Plaintiff fails to state a claim upon which relief can be granted.

Plaintiff fails to allege any factual basis for the Court to exercise personal jurisdiction over any Defendant. Snap is incorporated in Delaware and has its principal place of business in California. Plaintiff does not allege that Snap has sufficient contacts with South Carolina that would subject it to this Court's jurisdiction. That Snapchat is available to South Carolina residents and some Snapchat users are in the forum is not enough. Dozens of courts in the Fourth Circuit and around the country have held that the mere fact that a website or application is available to residents of a state is not sufficient to confer personal jurisdiction, even if in-state usage of the website or app allegedly caused in-state harm. Similarly, Defendants Spiegel and White—Snap's

1

CEO and former COO, respectively—are not domiciled in South Carolina, do not own property or pay taxes in South Carolina and have never directed Snap's business towards South Carolina.

Snap also raised a personal jurisdiction argument in its prior motion to dismiss, which was fully briefed prior to Plaintiff's filing of the Amended Complaint. (*See* Dkt. Nos. 13, 23, 26.) With the benefit of this prior briefing, Plaintiff has tried but failed to remedy the prior complaint's deficiencies. Plaintiff, when seeking leave to amend, asserted that the Amended Complaint would "plead facts with more particularity regarding Defendants' relevant activities within and directed at the forum." (Dkt. No. 32.) However, the only new activities the Amended Complaint alleges concern Snap's global advertising and its use of location-based advertising. This global advertising business does not make Defendants subject to the Court's jurisdiction because there is no link between Snap's ***global advertising business*** on the one hand, and the ***automobile accident*** that occurred in this forum on the other. Plaintiff cannot adequately allege that its "claim arises out of activities directed at the forum state" because the automobile accident at the center of this case has no connection to Snap's location-based advertising, or indeed to any advertising at all. *See PTA-FLA, Inc. v. ZTE Corp.*, 715 F.Appx. 237, 242 (4th Cir. 2017).

Plaintiff also fails to allege sufficient facts to state a claim upon which relief can be granted. Plaintiff does not adequately allege that Snapchat proximately caused the automobile accident. Even though Snap pointed out the inadequacy of the causal link in the prior briefing, the Amended Complaint still fails to tie the Speed Filter to the accident. Despite an opportunity to amend their complaint to bolster their causation allegations, Plaintiff's theory is still a mystery. Plaintiff now alleges that some unidentified occupant in the car—not necessarily the driver—was ***either*** using the Speed Filter ***or*** that this unnamed occupant was not using the Speed Filter but planned to. Beyond the equivocal allegation about whether the Speed Filter was actually being used, Plaintiff

omits any allegation tying the Speed Filter to the ***driver*** whose reckless driving caused the accident. There is no allegation that, even if the Speed Filter was in use, the driver knew of it or was influenced by it in any way. Without such allegations, Plaintiff's complaint cannot plausibly state a claim that that the Speed Filter was a "but for" cause, let alone proximate cause, of the accident.

Plaintiff has also added a cause of action for "Strict Liability/Ultra Hazardous Activities" against Defendants, which makes the unprecedented and unsupported allegation that provision of a mobile phone communications app is an "ultra hazardous activity." (Compl. ¶¶ 19-22.) But the Amended Complaint offers no facts that would support this extraordinary claim.

As to individual defendants Spiegel and White, Plaintiff fails to allege *any* facts against either. Rather, the Amended Complaint's sole statement is a legally conclusory allegation that they "were acting as agents, servants or employees of Defendant Snapchat who determined, directed, controlled, and participated in the conduct and activity of Defendant Snapchat complained of herein and are thereby liable to Plaintiff herein" by virtue of their "high level of control" over Snap's corporate activities as its CEO and COO. (Compl. ¶ 5.) Under South Carolina law and federal pleading standards, this is not close to sufficient to allow corporate officers of a company to be sued in their personal capacity.

In sum, even with the benefit of a full briefing on Defendants' prior motion to dismiss, Plaintiff has failed to raise a colorable claim for relief against Defendants. The Court should thus dismiss the Amended Complaint without further leave to amend.

This Motion is based on the Federal Rules of Civil Procedure, the relevant statutory and case law, the Constitution, the grounds stated herein, pleadings on file, the Memorandum of Law in Support of this Motion filed herewith, the affidavits in support of this Motion, any additional

memoranda in support of this Motion and any in reply, all arguments presented to the Court, exhibits and other materials properly received and considered by the Court.

Dated: March 29, 2024                        Respectfully submitted,
Myrtle Beach, South Carolina

                                             /s/ Wesley T. Moran
                                             G. Mark Phillips (Federal Bar No. 3051)
                                             Nelson Mullins Riley & Scarborough LLP
                                             151 Meeting Street, Sixth Floor
                                             Charleston, South Carolina 29401
                                             Tel.: (843) 853-5200
                                             Fax: (842) 722-8700
                                             mark.phillips@nelsonmullins.com

                                             Wesley T. Moran (Federal Bar No. 12797)
                                             Nelson Mullins Riley & Scarborough LLP
                                             Pinnacle Corporate Center, Suite 300
                                             3751 Robert M. Grissom Parkway
                                             Myrtle Beach, South Carolina 29577
                                             Tel.: (843) 448-3500
                                             Fax: (843) 448-3437
                                             wes.moran@nelsonmullins.com

Dated: March 29, 2024                        Respectfully submitted,
Irvine, California

                                             /s/ Reuben C. Cahn
                                             Jennifer L. Keller (admitted *Pro Hac Vice*)
                                             Reuben C. Cahn (admitted *Pro Hac Vice*)
                                             Keller/Anderle LLP
                                             18300 Von Karman Ave., Suite 930
                                             Irvine, California 92612
                                             Tel.: (949) 476-8700
                                             Fax: (949) 476-0900
                                             jkeller@kelleranderle.com
                                             rcahn@kelleranderle.com

                                             Counsel for Defendants SNAP INC., d/b/a
                                             SNAPCHAT, INC., EVAN SPIEGEL, and EMILY
                                             WHITE

# TABLE OF CONTENTS

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT ....... 1

BACKGROUND ........................................................................................................... 3

    I.     The Snapchat Application. ................................................................................ 3

    II.    Plaintiff's Allegations. ..................................................................................... 5

    III.   The Lack of Allegations Against Evan Spiegel and Emily White................................ 5

    IV.   Snap's Lack of Contacts with South Carolina. ........................................................ 6

    V.    The Individual Defendants' Lack of Contacts with South Carolina............................ 8

ARGUMENT .............................................................................................................. 8

    I.     The Court Lacks Personal Jurisdiction Over the Defendants. ..................................... 8

        A.    Plaintiff cannot establish general personal jurisdiction over Defendants......... 9

        B.    Plaintiff cannot establish specific personal jurisdiction over Defendants. ....... 9

            i.     *A Website or App's Availability in a State Does not Constitute Purposeful Availment.* ................................................................ 11

            ii.    *None of Defendants' Other Actions Establish the Purposeful Availment Giving Rise to the Claim.* ................................................ 13

            iii.   *Because Defendants Have No Activities in South Carolina, Plaintiff Cannot Show the Claims Arise Out of the Activities Directed at South Carolina* ............................................................... 16

            iv.   *Exercising Jurisdiction Over Defendants Would Be Constitutionally Unreasonable.* .............................................................. 19

    II.    Plaintiff Does Not State a Valid Claim for Relief Under Rule 12(b)(6). .................. 20

        A.    Plaintiff fails to allege facts showing that the Speed Filter proximately caused the accident. ................................................................. 22

        B.    Plaintiff Fails to Allege *Any* Facts Concerning Defendants Spiegel or White. ................................................................................. 24

        C.    Plaintiff's Strict Liability/Ultra-Hazardous Activity Claim Must Be Dismissed. ............................................................................. 26

CONCLUSION........................................................................................................... 27

# TABLE OF AUTHORITIES

**Cases**

*ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*,
    293 F.3d 707 (4th Cir. 2002) ........................................................................... 10, 11

*AMA Multimedia, LLC v. Wanat*,
    970 F.3d 1201 (9th Cir. 2020) ......................................................................... 12, 15

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .......................................................................................... 21, 24

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) .......................................................................................... 21, 24

*Bibiyan v. Marjan Television Network, Ltd.*,
    2019 WL 422664 (C.D. Cal. Feb. 4, 2019) ............................................................. 12

*Blocker v. Black Entm't Television*,
    2018 WL 3797568 (D. Or. June 26, 2018) ............................................................. 12

*Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*,
    582 U.S. 255 (2017) ....................................................................................... 8, 9, 10

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985) ............................................................................................ 9, 19

*Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*,
    334 F.3d 390 (4th Cir. 2003) ................................................................................... 11

*Clarke Veneers & Plywood, Inc. v. Mentakab Veneer & Plywood, SDN BHD*,
    821 F.Appx. 243 (4th Cir. 2020) .............................................................................. 17

*Columbia Briargate Co. v. First National Bank in Dallas*,
    713 F.2d 1052 (4th Cir. 1983) ................................................................................ 16

*Consulting Engineers Corp. v. Geometric Ltd.*,
    561 F.3d 273 (4th Cir. 2009) ...................................................................... 14, 15, 16

*Cozzarelli v. Inspire Pharmaceuticals, Inc.*,
    549 F.3d 618 (4th Cir. 2008) ................................................................................... 27

*Custom Dynamics, LLC v. Cyron, Inc.*,
    2020 WL 3229297 (E.D.N.C. June 15, 2020) ........................................................ 12

*Desirous Parties Unlimited, Inc. v. Right Connection, Inc.*,
  2021 WL 2779313 (S.D. Tex. July 2, 2021) ................................................................ 12

*DFSB Kollective Co. v. Bourne*,
  897 F. Supp. 2d 871 (N.D. Cal. 2012) ........................................................................ 12

*Edwards v. City of Goldsboro*,
  178 F.3d 231 (4th Cir. 1999) ...................................................................................... 21

*Farrar v. McFarlane Aviation, Inc.*,
  823 F. Appx. 161 (4th Cir. 2020) ............................................................................... 10

*FireClean, LLC v. Tuohy*,
  2016 WL 3952093 (E.D. Va. July 21, 2016) .............................................................. 12

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
  141 S. Ct. 1017 (2021) ................................................................................................. 9

*Georgalis v. Facebook, Inc.*,
  324 F. Supp. 3d 955 (N.D. Ohio 2018) ........................................................ 13, 14, 15, 17

*Goodyear Dunlop Tires Operations v. Brown*,
  564 U.S. 915 (2011) ................................................................................................... 8, 9

*Grayson v. Anderson*,
  816 F.3d 262 (4th Cir. 2016) ......................................................................................11

*Gullen v. Facebook.com, Inc.*,
  2016 WL 245910 (N.D. Ill. Jan. 21, 2016) ................................................................ 12

*Harrison v. Facebook, Inc.*,
  2019 WL 1090779 (S.D. Ala. Jan. 17, 2019) ............................................................ 12

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
  466 U.S. 408 (1984) ................................................................................................... 10

*Hepp v. Facebook*,
  14 F.4th 204 (3rd Cir. 2021) ...................................................................................... 18

*Hunt v. Rabon*,
  272 S.E.2d 643 (S.C. 1980) ....................................................................................... 25

*Intercarrier Commc'ns LLC v. WhatsApp Inc.*,
  2013 WL 5230631 (E.D. Va. Sept. 13, 2013) ....................................................... 12, 13

*Intercarrier Commc'ns, LLC v. Kik Interactive, Inc.*,

iii

2013 WL 4061259 (E.D.Va. Aug. 9, 2013) .............................................................................. 12

*Johnson v. TheHuffingtonPost.com, Inc.*,
  21 F.4th 314 (5th Cir. 2021) ........................................................................................... 17

*Livingston v. Noland Corp.*,
  293 S.C. 521, 362 S.E.2d 16 (1987) ............................................................................... 21

*Maseng v. Lenox Corp.*,
  483 F.Supp.3d 360 (D.S.C. 2020).................................................................................... 17

*Mincey v. World Savings Bank, FSB*,
  614 F. Supp. 2d 610 (D.S.C. 2008)................................................................................... 25

*Palmer v. Savoy*,
  2021 WL 3559047 (N.C. Super. July 28, 2021) .............................................................. 1

*Perdue Foods LLC v. BRF S.A.*,
  814 F.3d 185 (4th Cir. 2016) ........................................................................................... 10

*Pub. Impact, LLC v. Bos. Consulting Grp., Inc.*,
  117 F. Supp. 3d 732 (M.D.N.C. Aug. 3, 2015) .............................................................. 12

*Ralls v. Facebook*,
  221 F. Supp. 3d 1237 (W.D. Wash. 2016)....................................................................... 13

*Ravan v. Greenville County*,
  315 S.C. 447 (Ct. App. 1993) .................................................................................... 21, 26

*Rowe v. Hyatt*,
  321 S.C. 366 (1996) ..................................................................................................... 3, 24, 25

*Ruhrgas AG v. Marathon Oil Co.*,
  526 U.S. 574 (1999) .......................................................................................................... 8

*Savannah Bank, N.A. v. Stalliard*,
  734 S.E.2d 161 (2012) ...................................................................................................... 21

*Scurmont LLC v. Firehouse Rest. Grp., Inc.*,
  2010 WL 11433199 (D.S.C. May 19, 2010)..................................................................... 25

*Shockley v. Hoechst Celanese Corp.*,
  1993 WL 241179 (4th Cir. Jun. 28, 1993) ....................................................................... 26

*Summers v. Harrison Constr.*,

298 S.C. 451 (1989) .................................................................................................. 21

*UMG Recordings, Inc. v. Kurbanov*,
   963 F.3d 344 (4th Cir. 2020) ............................................................................ 18, 19

*Walden v. Fiore*,
   571 U.S. 277 (2014) ..................................................................................... 10, 16, 20

*Wallace v. A.H. Guion & Co.*,
   237 S.C. 349 (1960) ......................................................................................... 21, 26

*Wallace v. Yamaha Motors Corp., U.S.A.*,
   No. 19-2459, 2022 WL 61430 (4th Cir. Jan. 6, 2022) ............................................ 10

*Wallace v. Yamaha Motors Corp.,*
   *U.S.A.*, No. 9:19-cv-0730-DCN, 2019 WL 6170419 (D.S.C. Nov. 20, 2019) ........................ 10

*Winley v. Int'l Paper Co.*,
   2012 WL 13047989 (D.S.C. Oct. 23, 2012) .................................................... 26, 27

*Young v. New Haven Advocate*,
   315 F.3d 256 (4th Cir. 2002) …………………………………………………………11

*Young v. Tide Craft, Inc.*,
   270 S.C. 453, 242 S.E.2d 671 (1978) .................................................................. 21

<u>**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT**</u>

This case stems from a tragic though not uncommon occurrence—a teenager, driving recklessly at high speed, lost control of her car, and in the collision that followed, an innocent passenger died. Plaintiff, the estate of the deceased passenger represented by her parents, has not sued the driver, or the driver's parents, the car's owners, or anyone else who might normally be held responsible for the accident. Instead, Plaintiff has sued Snap and two of its executives. Snap is a technology company that created and operates the Snapchat application. Hundreds of millions of people use Snapchat every day to communicate with friends and family through text-based messages, photos, and short videos. Plaintiff seeks to hold Snap liable for the driver's decision to drive recklessly, contending that Snapchat's Speed Filter—a feature that was not even available at the time of the crash, and had not been available at driving speeds for years—somehow encouraged the driver's recklessness. For two independent reasons, Plaintiff's lawsuit fails.

First, the Amended Complaint must be dismissed because the Court cannot exercise personal jurisdiction over Defendants. Although Snapchat is available nationwide, courts across the country—including the Fourth Circuit—have held that making a website or downloadable app available nationwide does not subject the creator to nationwide jurisdiction; rather, jurisdiction is appropriate *only if* the website or app *directly targets a specific forum* and the claim *arises from that in-forum activity*. Snap has not targeted any of its activities at South Carolina. Indeed, several courts have already concluded Snap is not subject to personal jurisdiction based simply on a third-party's use of Snapchat in the forum. *Palmer v. Savoy*, No. 20-CVS-94, 2021 WL 3559047 (N.C. Super. July 28, 2021). Plaintiff tries to point to Snap's provision of location-based advertising to justify this court's exercise of jurisdiction, but this effort fails because there is no link between Snap's *global advertising business* and the *automobile accident in South Carolina*. For the Court

to exercise specific personal jurisdiction, there must be an adequate nexus between a defendant's conduct targeting the forum—the jurisdictional "hook"—and the cause of action. But this case has nothing to do with advertising; indeed, the original complaint did not mention advertising, and the allegations against Snap would be identical whether Snap offered, or did not offer, advertising.

The corporate officers who were named as defendants have even fewer jurisdictional ties to the forum. The Amended Complaint makes *no allegations* of in-forum activity by Snap CEO Evan Spiegel or former Snap COO Emily White, instead appearing to contend that so long as a corporation is subject to personal jurisdiction in a forum, the corporation's officers are subject to personal jurisdiction there in their individual capacity. That is not the law.

Beyond these fatal jurisdictional deficiencies, Plaintiff's claims independently fail because Plaintiff has not alleged, and cannot allege, that Snapchat's Speed Filter—which was not part of the app at all on the date of the accident and had not been available at driving speeds (between 35 and 170 miles per hour) for years before—contributed to the accident. The Amended Complaint states that "at least one occupant" was "using and/or preparing to use Speed Filter immediately before" the accident; but there are no facts alleged that the *driver* was using Speed Filter, or that the *driver* was influenced by another occupant's use of the Speed Filter, much less *how* the driver was so influenced. With no allegation as to the driver's motivations, the alleged use (or intended use) of the Speed Filter by *other* car occupants is irrelevant, as those occupants were not in control of the motor vehicle. Moreover, any assertion that the driver was motivated to speed by a desire to use the Speed Filter—and even that assertion is not in the Amended Complaint—would be highly questionable given that the Speed Filter had not been available at driving speeds for years. Because Plaintiff has not pled and cannot plead proximate causation, both the negligence and strict liability claims fail.

2

With respect to the individual Defendants, Plaintiff does not allege *any facts* demonstrating that Defendants Spiegel or White engaged in any conduct for which they could be held personally liable. Plaintiff merely alleges in a conclusory manner that Spiegel and White "determined, directed, controlled, and participated in the conduct and activity of Defendant Snapchat complained of [in the Complaint] and are thereby liable to Plaintiff herein" by virtue of their "high level of control over corporate activities pertaining to the collection and sale of data from Snapchat users in South Carolina for advertising purposes, including data collected from users of the Speed Filter." (Compl. ¶ 5.) If such boilerplate allegations were all that was required to impose personal liability on corporate officers, then corporate officers would be added as individual defendants to literally every case against a corporation. But under federal pleading standards and South Carolina law, a plaintiff suing multiple defendants must plead factual allegations establishing the liability of each. Executives may not be sued in their individual capacity any time the company is sued. *Rowe v. Hyatt*, 321 S.C. 366, 369 (1996) ("[a]n officer, director, or controlling person in a corporation is not, merely as a result of his or her status as such, personally liable for the torts of the corporation."). But that appears to be what Plaintiff believes, as they make no attempt to allege facts that would give rise to *personal* liability of Snap's executives.

In sum, there is no personal jurisdiction over any Defendant, and Plaintiff's failure to plead causation dooms both causes of action. Defendants therefore request the Court grant this Motion to Dismiss the Amended Complaint without further leave to amend.

## **BACKGROUND**

### I.    **The Snapchat Application.**

Snap is the developer of Snapchat, a camera and communications platform available as a mobile phone application. Snapchat allows users to communicate with each other by creating and

sharing photo and video messages called "snaps." Users can modify a "snap" by adding text, stickers, or a wide array of filters. For example, users can add text captions to a snap, draw on it, or add decorative borders. They also can add "filters," or visual overlays that sit on top of the snap. Some filters add a time stamp of when the snap was taken; others overlay the snap with the location or altitude; and others show the temperature. No user is required to use any filter.

At issue here is a speedometer filter—not part of the app on the date of the collision—that overlaid on a photo or video the speed at which a user was travelling when the snap was taken (the "Speed Filter"). This is a snap using the Speed Filter on an airplane:



Plaintiff does not allege that the Speed Filter performs any function other than displaying actual speed. Plaintiff does not allege, for example, that the Speed Filter tells users to speed up or to go at any particular speed. The Speed Filter is not designed for use while driving, or while performing any particular activity; users can use the Speed Filter while, for example, taking a flight, jogging, riding a train, or even sitting still.

## II.    Plaintiff's Allegations.

Plaintiff alleges that on June 17, 2021, Kaiea Spring Batts was a passenger in an automobile traveling at "an extremely high and dangerous rate of speed." (Compl. ¶ 17.) As a result of the driver's recklessness, the automobile crashed, and Ms. Batts died. (*Id.*) Plaintiff alleges that an unidentified occupant of the vehicle was a Snapchat user who "was using and/or preparing to use Speed Filter" before the accident.[1] (*Id.*)

## III.    The Lack of Allegations Against Evan Spiegel and Emily White.

In addition to Snap, Plaintiff names as defendants Evan Spiegel, Snap's Chief Executive Officer, and Emily White, Snap's former Chief Operating Officer in their individual capacities. (Compl. ¶ 5; Dkt. No. 13-2, ("Spiegel Aff.") ¶ 5; Dkt. No. 13-3, ("White Aff.") ¶ 5.) Plaintiff does not offer any specific allegations against either Spiegel or White. Beyond a boilerplate statement that the CEO and COO of Snap "exercised a high level of control" over Snap's activities, including the "provision and maintenance of Speed Filter and Snap's use of the Speed Filter to encourage and increase Snapchat user engagement," the only reference to these two defendants in the entire complaint is a single paragraph where Plaintiff alleges they were "residents of states other than South Carolina and were at all times mentioned herein acting as agents, servants or employees of Defendant [Snap] who determined, directed, controlled, and participated in the conduct and activity of Defendant Snapchat complained of herein and are thereby liable to Plaintiff herein." (Compl. ¶ 5.)

---

[1]    Although we accept Plaintiff's allegations as true for the purpose of this Motion, Plaintiff's Amended Complaint – like its predecessor complaint – omits mention of the fact that the Speed Filter (or its later variant, the Speed Sticker) was unavailable to Snapchat users by the day of the accident. (*See* Affidavit of Ceci Mourkogiannis In Support of Defendants' Motion to Dismiss Plaintiffs' Amended Complaint ("Mourkogiannis Aff.") concurrently filed herewith and attached as **Exhibit A**, ¶ 10.) It also omits mention that for years before that accident, the Speed Filter was not operational between the speeds of 35mph to 170mph. (*Id.* ¶ 8.)

IV.    <u>**Snap's Lack of Contacts with South Carolina.**</u>

The Amended Complaint alleges that "the events giving rise to this claim – i.e., the accident resulting in Kaiea Batts' death – occurred in this district." (Compl. ¶ 8.)  To the extent Plaintiff means "events" to refer solely to the activities of the driver and passenger in the car with Kaiea Batts, this statement is correct.  To the extent Plaintiff intends "events" to refer to *Defendants'* activities, this statement is incorrect and cannot support the Court's exercise of personal jurisdiction over Defendants.

Snap is incorporated in Delaware and has its principal place of business in California. (Compl. ¶ 2.)  Although Snap has users in all 50 states and in countries around the world, its operations are based in California.  (Dkt. No. 13-1 ("Locascio Aff.") ¶¶ 6, 11.)  None of Snap's officers or directors resides in or is domiciled in South Carolina, nor has Snap ever held a board of directors or shareholder meeting in South Carolina.  (*Id.* ¶¶ 7, 8.)  Snap has no registered agent for service of process in South Carolina, no bank accounts in South Carolina, and has never paid corporate income or payroll taxes in South Carolina.  (*Id.* ¶¶ 14, 17-18.)  When the accident occurred in 2021, Snap had no employees in South Carolina.  (*Id.* ¶ 10.)  Snap does not have any offices, facilities, or other interests in real estate in South Carolina, and has no telephone listings or mailing address in South Carolina.  (*Id.* ¶¶ 15-16.)

As of year-end 2021 (the year of the automobile accident forming the basis of Plaintiff's complaint), 319 million people used Snapchat daily.  (*Id.*)  But Snap does not recruit, target, or solicit users specifically from South Carolina, target revenue specifically from South Carolina users, or otherwise focus or target its operations towards South Carolina or its residents.  (*Id.* ¶ 19.)  Snap has never distributed the Snapchat mobile app directly to users.  (*Id.* ¶ 12.)  Instead, users must download Snapchat through third-party hosts like Apple's App Store and the Google Play

6

Store for use on their smartphones.  (*Id.*)  Snapchat runs solely on the Google Cloud Platform and Amazon Web Services in the cloud; Snap does not own or operate any servers or data centers in South Carolina.  (*Id.* ¶ 13.)  Moreover, nothing involving the Speed Filter at issue in this case has ties to South Carolina (other than the fact that the occupants of the car at issue were allegedly using it—or contemplating using it—in South Carolina).  The design, development, engineering, and deployment of Snapchat and the Speed Filter all took place outside South Carolina.  (*Id.* ¶ 9.)

Snapchat functions similarly throughout the United States.  Snap has made no unique changes to the app for users in South Carolina.  (Mourkogiannis Aff. ¶ 5.)  Versions released to users in South Carolina are identical in terms of features, functions, and limitations (including the blackout ranges in the Speed Filter) to the versions released to users in other states.  (*Id.*)

In June 2021, South Carolina users constituted only 0.26% of Snapchat's total worldwide users or 0.96% of Snapchat's total United States based users, based on the average daily active users during that month.  (*Id.* ¶ 13)

Snap has never used Speed Filter data for the purposes of targeted advertising, and Snap has never placed advertisements on the Speed Filter.  (*Id.*  ¶ 11.)  Snap has never collected location data from the use of the Speed Filter.  (*Id.*)  As such, Snap has never used any information collected from the Speed Filter for use in any location-based advertising, including any location-based advertising in South Carolina.  (*Id.*)  Thus, any location-based advertising that Snap's advertisers offered in South Carolina was not based on information gained from the Speed Filter or its use or availability.

Nor has Snap ever received revenues from the use of the Speed Filter or from the provision of data concerning its use.  (*Id.* ¶ 12.)  Snap has never specifically advertised the Speed Filter.  (*Id.*)  Snap has never sold advertising space on the Speed Filter (such as a sponsored Speed Filter).  (*Id.*)

Snap has never directed or targeted advertisements based on its users' use of the Speed Filter. (*Id.*) Snap has never provided advertisers with data about Speed Filter use to allow advertisers to engage in such targeting. (*Id.*)

## V.    The Individual Defendants' Lack of Contacts with South Carolina.

Spiegel is Snap's CEO and one of its founders. (Spiegel Aff. ¶ 5.) From January 2014 to March 2015 (6 years before the accident at issue here), White was Snap's Chief Operating Officer ("COO"). (White Aff. ¶ 5.) Neither Spiegel nor White is domiciled in South Carolina, owns property in South Carolina, has business interests in South Carolina, or has paid taxes in South Carolina. (Spiegel Aff. ¶¶ 6-7; White Aff ¶¶ 6, 8.) Neither Spiegel nor White ever directed Snap to target their efforts at South Carolina residents. (Spiegel Aff. ¶ 8; White Aff ¶ 7.) In short, neither Spiegel nor White has any connection to South Carolina at all.

## ARGUMENT

## I.    The Court Lacks Personal Jurisdiction Over the Defendants.

Defendants have no South Carolina connections that could justify the Court exercising jurisdiction over them. Personal jurisdiction is an "essential element . . . without which the court is 'powerless to proceed to an adjudication.'" *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999). Plaintiff must show that the Court can exercise either general jurisdiction or specific jurisdiction over Defendants consistent with the Due Process Clause. *Goodyear Dunlop Tires Operations v. Brown*, 564 U.S. 915, 918–19 (2011). Plaintiff cannot satisfy its burden to make this showing here.

There are two types of personal jurisdiction, general and specific. *Bristol-Myers Squibb Co. v. Super. Ct. of Cal.,* 582 U.S. 255, 262 (2017). "A court with general jurisdiction may hear *any* claim against that defendant, even if all the incidents underlying the claim occurred in a

different State." *Id*. But general jurisdiction over either and entity or an individual exists only where either can be considered "at home." For an individual, that is typically their place of domicile, for a corporation, its place of incorporation or headquarters. *Id*. Specific jurisdiction allows a court to hear a suit only when it "arises out of" a *defendant's* deliberate contacts with a forum: "For this reason, specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Id.* (internal quotation marks omitted).

### A.     Plaintiff cannot establish general personal jurisdiction over Defendants.

Plaintiff does not, and cannot, allege that general personal jurisdiction exists over Snap in South Carolina given that Snap is incorporated and headquartered out of state. (Locascio Aff. ¶ 6); *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021) (with rare exceptions, general jurisdiction exists only in the state(s) of incorporation and principal place of business). Similarly, Plaintiff concedes Spiegel and White are domiciled in and residents of states other than South Carolina, and Plaintiff makes no allegations suggesting or demonstrating general jurisdiction exists over them either. *Goodyear*, 564 U.S. at 924 ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile"). Accordingly, general personal jurisdiction does not exist over any Defendant.

### B.     Plaintiff cannot establish specific personal jurisdiction over Defendants.

Specific jurisdiction exists only where the defendant has some in-forum activity and the lawsuit "arise[s] out of or relate[s] to the defendant's contacts with the forum." *Bristol-Myers*, 582 U.S. at 262; *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (holding specific jurisdiction generally requires that "the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to'

those activities."). Specific jurisdiction depends upon "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" *Perdue Foods LLC v. BRF S.A.*, 814 F.3d 185, 189 (4th Cir. 2016). Specific jurisdiction is *not* based on the plaintiff's acts; rather, it "must arise of the contacts that the defendant himself creates with the forum." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (cleaned up). In other words, specific jurisdiction is based only on a defendant's purposeful in-state conduct connected to the lawsuit. *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 711-12 (4th Cir. 2002) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)).

Plaintiff suggests Snap's creation of an app that can be downloaded and used wherever the internet is available and its receipt of revenues from showing ads to South Carolina users establishes personal jurisdiction. It does not. Basing specific jurisdiction on "general connections" between Snap and South Carolina unrelated to the lawsuit's claim would pervert specific jurisdiction into a "loose and spurious form of general jurisdiction" against which the Supreme Court has warned. *Bristol-Myers*, 582 U.S. at 264; *see also Wallace v. Yamaha Motors Corp., U.S.A.*, No. 9:19-cv-0730-DCN, 2019 WL 6170419, at *6 (D.S.C. Nov. 20, 2019), *aff'd sub nom. Wallace v. Yamaha Motors Corp., U.S.A.*, No. 19-2459, 2022 WL 61430 (4th Cir. Jan. 6, 2022); *Farrar v. McFarlane Aviation, Inc.*, 823 F. Appx. 161, 164 (4th Cir. 2020) (holding that "incidental and attenuated contacts with the forum state related to the subject of the suit" cannot "support specific personal jurisdiction."). Rather, personal jurisdiction exists only where the claim arises

out of a defendant's purposefully availing conduct that is directed at the forum. *ALS Scan*, 293 F.3d at 711-12.

### i. A Website or App's Availability in a State Does not Constitute Purposeful Availment.

The mere fact that Snapchat is available in South Carolina is insufficient to establish that "the defendant had purposefully availed itself of the privilege of conducting activities in South Carolina." *Grayson v. Anderson*, 816 F.3d 262, 270 (4th Cir. 2016). Courts cannot assert personal jurisdiction over any defendant that creates a website or an app that is available nationwide.

Innumerable cases from the Fourth Circuit and courts across the country foreclose this approach, holding instead that a plaintiff must demonstrate the defendant's "manifest intent of targeting" a forum before the forum can assert specific personal jurisdiction. *See, e.g., Young v. New Haven Advocate*, 315 F.3d 256, 263 (4th Cir. 2002). Accordingly, the Fourth Circuit has held there is no personal jurisdiction over a news website that "could be accessed anywhere" if the plaintiff could not demonstrate the defendant acted with the "manifest intent of targeting" the forum state. *See id.* at 264 (holding that because the "newspapers did not post materials on the Internet with the manifest intent of targeting Virginia readers," they "could not have 'reasonably anticipated being haled into court [in Virginia].'"); *see also Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390 (4th Cir. 2003) (finding no personal jurisdiction in Maryland over Illinois-based CPC's website because "CPC must have acted with the 'manifest intent' of targeting Marylanders" notwithstanding injury felt in Maryland); *ALS Scan*, 293 F.3d at 712–15 (holding "personal jurisdiction could not be based on an Internet service provider's "activity in enabling [a website's] publication of . . . infringing photographs on the Internet," because the service provider "did not select or knowingly transmit [actionable] photographs specifically to [the state].").

11

Courts across the country are in accord. For example, the Ninth Circuit in *AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201 (9th Cir. 2020), held a website available to "all users in every forum" was alone not enough to give rise to specific personal jurisdiction; rather, the website must have a "forum-specific focus." *Id.* at 1210; *Pub. Impact, LLC v. Bos. Consulting Grp., Inc.*, 117 F. Supp. 3d 732, 744 (M.D.N.C. Aug. 3, 2015) (finding a website that was "broadly directed toward a 'global' audience" did not "specifically target North Carolina"); *DFSB Kollective Co. v. Bourne*, 897 F. Supp. 2d 871, 881 (N.D. Cal. 2012) ("If the defendant merely operates a website, even a highly interactive[] website, that is accessible from, but does not target, the forum state, then the defendant may not be hauled into court in that state without offending the Constitution.").[2]

In the context of social networking apps specifically, "ubiquitous presence and numerous [forum state] users" is not enough to establish purposeful availment. *Georgalis v. Facebook, Inc.*,

---

[2]   Myriad other decisions mirror these holdings. *See, e.g.*, *Desirous Parties Unlimited, Inc. v. Right Connection, Inc.*, 2021 WL 2779313, at *7–8 (S.D. Tex. July 2, 2021) (operation of website "available throughout the United States" . . . "does not constitute purposeful availment"); *Custom Dynamics, LLC v. Cyron, Inc.*, 2020 WL 3229297, at *3–4 (E.D.N.C. June 15, 2020) (defendant's website and Facebook advertisements, one of which was sent to a potential North Carolina customer, did not constitute purposeful availment sufficient for personal jurisdiction in North Carolina because the advertisements were not "expressly aimed" at North Carolina); *Bibiyan v. Marjan Television Network, Ltd.*, 2019 WL 422664, at *4 (C.D. Cal. Feb. 4, 2019) (that defendant's app is available on Google and Apple's app stores has "no bearing on whether Defendant intended to exploit the Persian music video viewership market in California"); *Harrison v. Facebook, Inc.*, 2019 WL 1090779, at *4 (S.D. Ala. Jan. 17, 2019) (finding Alabama had no general or specific jurisdiction over Facebook); *Blocker v. Black Entm't Television*, 2018 WL 3797568 (D. Or. June 26, 2018) (holding Oregon lacked jurisdiction over Myspace where plaintiff offered no evidence Myspace directed any activity towards Oregon); *FireClean, LLC v. Tuohy*, 2016 WL 3952093, at *6 (E.D. Va. July 21, 2016) (nationwide blog and Facebook page not targeted at Virginia readers even where numerous Virginia readers "liked" the Facebook page); *Gullen v. Facebook.com, Inc.*, 2016 WL 245910, at *3 (N.D. Ill. Jan. 21, 2016) (no specific personal jurisdiction over Facebook in Illinois); *Intercarrier Commc'ns LLC v. WhatsApp Inc.*, 2013 WL 5230631, at *4 (E.D. Va. Sept. 13, 2013) (rejecting argument that "a company 'consciously' or 'deliberately' targets a forum if a user unilaterally downloads or uses its software within that forum"); *Intercarrier Commc'ns, LLC v. Kik Interactive, Inc.*, 2013 WL 4061259, at *4 (E.D.Va. Aug. 9, 2013) (explaining that a defendant's self-promotion on Facebook and Twitter does not support a Virginia court's exercise of personal jurisdiction because there was no evidence that the defendant targeted Virginia specifically).

324 F. Supp. 3d 955, 960 (N.D. Ohio 2018); *see also Ralls v. Facebook*, 221 F. Supp. 3d 1237, 1244 (W.D. Wash. 2016) ("[P]ersonal jurisdiction over [a social media defendant] may not exist simply because a user avails himself of [defendant's] services in a state other than the states in which [defendant] is incorporated and has its principal place of business."); *Intercarrier Commc'ns LLC v. WhatsApp Inc.*, 2013 WL 5230631, at *4 (rejecting argument that "a company 'consciously' or 'deliberately' targets a forum if a user unilaterally downloads or uses its software within that forum").

Applying these principles, courts around the country have concluded that Snap is not subject to personal jurisdiction in their forums just because users downloaded and used the app in the forum and claim to have been harmed in the forum by such use. For example, the district court in *Ziencik v. Snap, Inc.* similarly involved allegations that the plaintiff suffered injuries in Pennsylvania arising from her use of Snapchat. *Ziencik*, 2021 WL 4076997, at *4 (W.D. Pa. Sept. 8, 2021). Concluding it lacked personal jurisdiction, the court explained that Snap "does not have officers or a registered agent in Pennsylvania and is headquartered in California." *Id.* Snap did not "target Pennsylvania's residents in any advertisements or market any product specifically in Pennsylvania." *Id.* The court expressly rejected plaintiffs' argument that Snap had "'voluntarily and consciously cho[]se[n] to do business in [that state]'" because it does not limit where its app is available. *Id.* Absent evidence that a defendant *intentionally* targeted a *specific* state, a court will not exercise personal jurisdiction over a defendant with a nationally available website or app.

      ii.      *None of Defendants' Other Actions Establish the Purposeful Availment Giving Rise to the Claim.*

The Fourth Circuit has identified the following factors the court may consider in assessing whether a business has purposefully availed itself of a forum, none of which support specific personal jurisdiction over Snap:

> Whether the defendant maintains offices or agents in the forum state; whether the defendant owns property in the forum state; whether the defendant reached into the forum state to solicit or initiate business; whether the defendant deliberately engaged in significant or long-term business activities in the forum state; whether the parties contractually agreed that the law of the forum state would govern disputes; whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship; the nature, quality, and extent of the parties' communications about the business being transacted; and whether the performance of contractual duties was to occur within the forum.

*Consulting Engineers Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009) (internal citations omitted).

Snap has no registered agent in South Carolina. (Locascio Aff. ¶ 14.) Snap does not have any offices, facilities, or other interests in real estate in South Carolina, and has no telephone listings or mailing address in South Carolina either. (*Id.* ¶¶ 15-16.) Snap does not specifically recruit, target, or solicit users from South Carolina, earn revenue through tools specifically designed to target South Carolina users, or otherwise focus or target its operations towards South Carolina residents. (*Id.* ¶ 19.) It has not agreed for disputes to be governed by the law of South Carolina. Instead, Snapchat's terms of service operative at the time of the accident have a forum-selection clause and choice-of-law clause designating California as the substantive law and venue that applies to all disputes. (*Id.* ¶ 20.) Snap has no business with Plaintiff and hence no communications concerning business with Plaintiff. Moreover, nothing about the creation or provision of Snapchat was specifically targeted at South Carolina. (*see* Locascio Aff. ¶ 19; Spiegel Aff. ¶ 7; White Aff. ¶ 8). In the context of this litigation, Snap's only connection to the forum state is its creation of the Snapchat platform, which is available throughout the world, including South Carolina. (*See id.* ¶¶ 12-13.) That is not enough. *Georgalis*, 324 F. Supp. 3d at 960-61 (no specific jurisdiction over Facebook without specific conduct directed towards Ohio by Facebook

14

that was arising from Facebook's alleged wrongdoing); *accord Consulting Engineers Corp.*, 561 F.3d at 281, n.9 (holding where a plaintiff "failed to satisfy the first prong of the specific jurisdiction test, [the court] need not analyze the remaining prongs.").

Casting about for a jurisdictional hook, Plaintiff seizes on Snap's provision of location-based advertising.  (*See* Compl. ¶ 3.). These are not Snapchat ads; they are third-party ads, involving non-parties who could seek to target Snapchat users based on the user's particular locations.  Snap, like nearly all digital advertising platforms, allows advertisers to target ads toward users in certain geographies.  Some advertisers choose to show their ads to users throughout the country.  Some advertisers—such as advertisers that have only a regional presence—ask Snap to show their ads only to users in certain states, or certain metro areas.  User-location-based advertising technology by definition is driven by users; users control the operation of the technology with their locations, and advertisers decide to target ads based on those locations. Snap's contacts with the forum cannot be determined based on someone else's conduct.

Indeed, courts across the country have rejected the theory that the provision of location-based advertising for that very reason—noting that "[i]f such geo-located advertisements constituted express aiming, [a defendant] could be said to expressly aim at any forum in which a user views the website." *AMA Multimedia*, 970 F.3d at 1211; *see also Georgalis*, 324 F. Supp. 3d at 961 (holding that the fact that Facebook "sells advertising services and those services direct certain (local) advertising to Ohio users" is "insufficient to establish specific jurisdiction.").

Plaintiff's jurisdictional allegations against Spiegel and White are even more lacking. Plaintiff does not allege facts related to *any* activities by them in South Carolina, much less activities justifying the exercise of specific personal jurisdiction.  That does not suffice.  "If the claim against the corporate agent rests on nothing more than that he is an officer or employee of

the non-resident corporation and if any connection he had with the commission of the tort occurred without the forum state . . . under sound due process principles, the nexus between the corporate agent and the forum state is too tenuous to support jurisdiction over the agent personally . . . under the long-arm statute." *Columbia Briargate Co. v. First National Bank in Dallas*, 713 F.2d 1052, 1064-65 (4th Cir. 1983). During their tenure at Snap, neither Spiegel nor White was domiciled in South Carolina; rather they were both domiciled in California and worked primarily from offices in California. (Spiegel Aff. ¶ 6; White Aff. ¶ 6.) Although Snapchat is available in all 50 states, none of the work Spiegel or White did for Snap focused on or was directed at the State of South Carolina, and neither the Snapchat application nor the Speed Filter was in any way specifically directed at the State of South Carolina. (Spiegel Aff. ¶ 8; White Aff. ¶ 7.) Neither Spiegel nor White owns property in South Carolina or has ever paid taxes in South Carolina. (Spiegel Aff. ¶ 7; White Aff. ¶ 8.) The individual Defendants have done nothing that would constitute purposeful availment, and any claim that this Court should exercise personal jurisdiction over them must fail.

### iii.     Because Defendants Have No Activities in South Carolina, Plaintiff Cannot Show the Claims Arise Out of the Activities Directed at South Carolina

"The second prong of the test for specific jurisdiction—that the plaintiff's claims arise out of the activities directed at the forum—requires that the defendant's contacts with the forum state form the basis of the suit." *Consulting Engineers*, 561 F.3d at 278-79; *see also Walden*, 571 U.S. at 284 ("Second, [the] minimum contacts analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there."). But the link between Defendants' purported contacts with the forum (advertising) and the facts that give rise to the cause of action (the automobile accident) are far-fetched. Plaintiff's original complaint did not even

include Snap's advertising business as a jurisdictional hook – it was added in the Amended Complaint in a transparent attempt to manufacture personal jurisdiction where none exists. Indeed, Plaintiff's assertions against Snap and its officers would be identical whether or not Snapchat contained advertising.

Plaintiff's allegations of Snap's "location-based advertising" cannot support specific jurisdiction, because such advertising is not targeted at South Carolina and did not "give[] rise to, or figure[] prominently in, the cause of action under consideration" – the June 17, 2021 car crash. *Maseng v. Lenox Corp.*, 483 F.Supp.3d 360, 364 (D.S.C. 2020); *see also Clarke Veneers & Plywood, Inc. v. Mentakab Veneer & Plywood, SDN BHD*, 821 F.Appx. 243, 244 (4th Cir. 2020) ("specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction."). Other courts have rejected attempts to tie personal jurisdiction to location-based advertising where the claims did not arise out of the advertising itself. In *Georgalis,* for example, the court found evidence Facebook was not subject to personal jurisdiction in Ohio despite location-based advertising because the claims alleging violations of the plaintiff's rights to free speech by Facebook – were "unrelated to and do not arise from Defendant's claimed sale of targeted marketing to Ohio residents." 324 F. Supp. 3d at 961. In another case, the Fifth Circuit found no relationship between a plaintiff's libel claim against a news website and the fact that the website "used visitors' location data to tailor advertising to them." *Johnson v. TheHuffingtonPost.com, Inc.*, 21 F.4th 314, 321 (5th Cir. 2021) ("Selling ads is no different from hawking tees and mugs. Those sales neither produced nor relate to [plaintiff's] libel claim."). Similarly, the Third Circuit evaluated Imgur and Reddit's contacts with Pennsylvania and rejected numerous contacts as having nothing to do with plaintiff's claim that her likeness had been misappropriated: "targeted [] advertising" to Pennsylvania, "an online merchandise store,"

17

"premium membership business and an online community organized around Philadelphia." *Hepp v. Facebook*, 14 F.4th 204, 208 (3rd Cir. 2021).

Here, Snap's advertising forms no part at all of Plaintiff's claims because advertising has no connection to the automobile accident from which those claims arose. Snap has never used Speed Filter data for the purposes of targeted advertising, and Snap has never placed advertisements on the speed filter or speed sticker. (Mourkogiannis Aff. ¶ 11.) The Speed Filter is not related to Snap's location-based advertising at all. (*Id.*) Snap has never used any information collected from the Speed Filter for use in any location-based advertising, including any location-based advertising in South Carolina. (*Id.*) Any location-based advertising that Snap's advertisers offered in South Carolina was not based on information gained from the Speed Filter or its use or availability. (*Id.*) Snap has never received revenues from the use of the Speed Filter or from the provision of data concerning the use of either. (*Id.* ¶ 12.) Snap has never advertised the Speed Filter. (*Id.*) Snap has never sold advertising space on the Speed Filter (such as a sponsored Speed Filter). (*Id.*) Snap has never directed or targeted advertisements based on its users' use of the Speed Filter. (*Id.*) Snap has never provided advertisers with data about Speed Filter use to allow advertisers to engage in such targeting. (*Id.*) Plaintiff's inability to show that its claims arise out of activity directed at the forum is fatal to their request that this Court exercise jurisdiction over Defendants.

Contrary to Plaintiff's arguments in its initial brief in opposition, *UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344 (4th Cir. 2020), does not support any claim that Snap's location-based advertising supports personal jurisdiction. *UMG* did consider a website's provision of advertising—but only in determining that the website's owner had a commercial relationship with website visitors even though they did not pay to use the website's copyright infringing tools. See

*UMG*, 963 F.3d at 353.  It did not hold that location-based advertising alone establishes that the defendant "targeted" the forum.  And *UMG* did not consider, let alone hold, that location-based advertising was tied to the lawsuit's claims.

Moreover, because the claims in *UMG* arose directly from the alleged purposefully-availing conduct, the case illustrates what must be shown to establish specific personal jurisdiction and why the complaint here fails to do so.  In *UMG*, plaintiff record companies (citizens of various US states) sued defendant Kurbanov (a Russian citizen) in Virginia district court for copyright infringement alleging that Kurbanov owned and operated two websites through which visitors extracted and downloaded copyrighted audio tracks from of videos available primarily on YouTube.  In other words, the websites themselves were the instrumentality of the intentional tort of infringement.  The Fourth Circuit held that specific jurisdiction existed over Kurbanov ***because the websites that he knowingly provided to Virginia users were the instrumentality of the tort that was the suit's subject.***  *UMG*, 963 F.3d at 354-55 ("Here, we find that [Plaintiffs'] claims arise out of activities directed at Virginia.  Kurbanov made two globally accessible websites and *Virginia visitors used them for alleged music piracy*.") (emphasis added).[3]  No such connection exists in this case.

> **iv.    *Exercising Jurisdiction Over Defendants Would Be Constitutionally Unreasonable.***

Even if Plaintiff had satisfied its burden for the first two requirements, the court would still be required to consider whether the exercise of jurisdiction otherwise "'comport[s] with fair play and substantial justice.'"  *Burger King Corp.*, 471 U.S. at 476.  To comport with constitutional

---

[3]  In *UMG*, Defendant also argued that it could not be subject to jurisdiction anywhere in the United States.  Here, Snap acknowledges that it is subject to jurisdiction in Delaware (its place of incorporation) and California (its principal place of business).  Thus, Plaintiff is not denied of a forum to bring suit simply because jurisdiction does not exist in South Carolina.

Due Process, "the *plaintiff* cannot be the only link between the defendant and the forum.  Rather, it is the *defendant's conduct that must form the necessary connection* with the forum State that is the basis for its jurisdiction over him." *Walden*, 571 U.S. at 285 (emphasis added) .  Accordingly, "[d]ue process requires that a defendant be hauled into court in a forum State based on his *own* affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." *Id.* at 286 (emphasis added) (citation omitted).

Here, there is a dearth of contacts between Defendants and South Carolina.  Plaintiff's claim to jurisdiction in South Carolina is based entirely on an accident occurring in South Carolina.  Constitutional Due Process forecloses Plaintiff's attempt to assert jurisdiction because "mere injury to a forum resident is not a sufficient connection to the forum.  Regardless of where a plaintiff lives or works, an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State." *Walden*, 571 U.S. at 290.

Because Plaintiff cannot satisfy any element of the governing three-part test, this Court cannot exercise personal jurisdiction over any defendant.  The Court should therefore dismiss Plaintiff's Amended Complaint for lack of personal jurisdiction.

## II.    Plaintiff Does Not State a Valid Claim for Relief Under Rule 12(b)(6).

Even if this Court had personal jurisdiction over Defendants, the Amended Complaint would still fail for the independent reason that it does not allege facts sufficient to state a claim.  Plaintiff has not come close to pleading that Snap's earlier provision of the Speed Filter proximately caused the car crash at issue.

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) examines the legal sufficiency of the facts alleged on the face of the complaint. *Edwards v. City of Goldsboro*, 178

F.3d 231, 243 (4th Cir. 1999). To survive a Rule 12(b)(6) motion, the "complaint must contain sufficient *factual matter*, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570) (emphasis added). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. A pleading that offers only "labels and conclusions," or "a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Iqbal*, 556 U.S. at 678 ("a complaint [will not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" (*quoting Twombly*, 550 U.S. at 557)).

To state a claim for negligence in South Carolina, a plaintiff must allege "(1) a duty of care owed by the defendant; (2) a breach of that duty by a negligent act or omission; (3) a negligent act or omission resulted in damages to the plaintiff; and (4) that damages proximately resulted from the breach of duty." *Savannah Bank, N.A. v. Stalliard*, 734 S.E.2d 161, 163–64 (2012). "If any of these elements is absent a negligence claim is not stated." *Summers v. Harrison Constr.*, 298 S.C. 451, 455 (1989). To state a claim for strict liability in South Carolina based on a defendant's alleged ultrahazardous activities, a plaintiff must allege that a defendant's activity is "abnormally dangerous" and that such activity caused injury to the plaintiff. *See, e.g.*, *Ravan v. Greenville County*, 315 S.C. 447 (Ct. App. 1993); *Wallace v. A.H. Guion & Co.*, 237 S.C. 349, 352 (1960); *Livingston v. Noland Corp.*, 293 S.C. 521, 362 S.E.2d 16 (1987) (finding proximate cause is an element of strict liability claim); *Young v. Tide Craft, Inc*., 270 S.C. 453, 242 S.E.2d 671 (1978) (holding proximate cause is an essential element common to the alternative theories of negligence, breach of implied warranty, and strict liability in tort).

A.    **Plaintiff fails to allege facts showing that the Speed Filter proximately caused the accident.**

For both the negligence and strict liability claims, Plaintiff is required to allege facts demonstrating that Defendants' conduct proximately caused their damages. Plaintiff makes numerous conclusory allegations regarding the design of the Snapchat app and Speed Filter but fails to allege critical facts that the Speed Filter was the cause of the accident at issue.

Plaintiff makes the following factual allegations concerning how the Speed Filter allegedly contributed to the accident:

- In June 2021, Kaiea Spring Batts was a passenger in an automobile traveling at "an extremely high and dangerous rate of speed causing the automobile to be involved in an automobile crash," (Compl. ¶ 17);

- Ms. Batts died as a result of the automobile crash, (*id.*); and

- At least one unnamed occupant of the vehicle was a Snapchat user who was "using and/or preparing to use Speed Filter immediately before the occurrence herein." (*Id.*)

That's it. Plaintiff provides no factual allegation explaining *how* the Speed Filter caused or contributed to the accident. There is no allegation that speed filter actually ***was*** in use at the time of the accident. Nor is there any allegation that the driver of the car even knew about or was influenced by the unnamed occupant's intended or actual use of the speed filter. If a backseat passenger was *intending* to use the Speed Filter, but did not *actually* use the Speed Filter and *did not tell the driver* that she was intending to use the Speed Filter, the passenger's unspoken desire to use the Speed Filter could not have caused the accident, proximately or otherwise.

Even assuming *arguendo* that there was something negligent about the design of the Speed Filter, that alleged defect is irrelevant if no one was using the Speed Filter at or around the time of

the accident, or if the driver had no knowledge that anyone in the car was using or planning to use the Speed Filter.  The Amended Complaint makes no factual allegation to show that the Speed Filter played any role in this accident.

The allegations concerning how the Speed Filter was "involved" in the car accident were even sparser in the original complaint.  The original complaint alleged only that the driver was a Snapchat user who had "previously used [the] Snapchat Speed Filter" at some unspecified time prior to the accident.  (Dkt. No., 1, Original Compl. ¶ 13.)  Plaintiff did not allege *when* this prior Speed Filter usage occurred—was it minutes before the accident? Hours? Days? Months? Years? Snap pointed this out in its motion to dismiss the original complaint, arguing that the allegations were insufficient to plead proximate causation.  Rather than have the Court rule on Snap's motion, Plaintiff filed the operative Amended Complaint, thus mooting Snap's earlier motion.  But the only change Plaintiff made on this point was to allege that *some occupant* (not the driver, as previously alleged) had used the Speed Filter at some unspecified time in the past and was *either* "using *and/or* preparing to use the Speed Filter immediately before" the accident.  (Amended Compl. ¶ 17.).  This is insufficient to plead proximate causation for the reasons stated herein.  And the fact that this is the strongest allegation Plaintiff could muster about Speed Filter usage—even after Snap pointed out the deficiencies on this point—compels the conclusion that further amendment on this point would be futile.  Indeed, given that the Speed Filter had been removed from the app before this accident occurred—and had not been available at driving speeds for *years* before this accident—any amendment that tries to tie the Speed Filter to this car crash would be highly suspect.

**B.    Plaintiff Fails to Allege *Any* Facts Concerning Defendants Spiegel or White.**

The claims against Defendants Spiegel and White are even more deficient.  Plaintiff alleges no facts at all pertaining to Defendants Spiegel or White "that [would] allow the court to draw the reasonable inference that the defendant[s are personally] liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  It is well settled South Carolina law that "[a]n officer, director, or controlling person in a corporation is not, merely as a result of his or her status as such, personally liable for the torts of the corporation." *Rowe v. Hyatt*, 321 S.C. 366, 369 (1996).  On the contrary, in South Carolina, "there is a strong presumption that an officer or director of a corporation is not, merely as a result of his standing as such, personally liable for the torts of the corporation." *Steinke v. Beach Bungee, Inc.*, 105 F.3d 192, 195 (4th Cir. 1997).  To impose liability on an officer or controlling person in a corporation, "the officer, director, or controlling person must ordinarily be shown to have in some way participated in or directed the tortious act." *Rowe*, 321 S.C. at 369.  To state a claim under Rule 12(b)(6), the Fourth Circuit requires a plaintiff to allege facts against each named defendant sufficient to state a claim against that defendant. *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002) (holding the plaintiff has burden of stating facts as to each defendant, and affirming dismissal where the plaintiff did not make those individual factual allegations).

Here, Plaintiff's only allegation against Defendants Spiegel and White is a single legal conclusion that, by virtue of their "high level of control over" Snap's business, they "determined, directed, controlled, and participated in the conduct and activity of Defendant Snapchat complained of [in the Complaint] and are thereby liable to Plaintiff herein." (Compl. ¶ 5.)  Plaintiff provides no factual allegations identifying what conduct Defendants Spiegel and White purportedly controlled, who directed a particular act of alleged misconduct, or who participated in

what conduct or activity. Instead, Plaintiff's only allegations regarding Spiegel and White are that they were "at all times mentioned herein acting as agents, servants or employees of Defendant Snapchat" and they "participated in the conduct and activity of Defendant Snapchat complained of herein . . . ." (Compl. ¶ 5.)[4] This singular allegation is insufficient to state a claim against either of them. *Mincey v. World Savings Bank, FSB*, 614 F. Supp. 2d 610, 623 (D.S.C. 2008) (granting a 12(b)(6) motion where the plaintiffs' amended complaint alleged little against the individual subsidiary defendants other than their corporate relationship to the corporate defendant and the remaining allegations simply stated legal conclusions without any factual allegations); *Hunt v. Rabon*, 272 S.E.2d 643, 644 (S.C. 1980) (affirming dismissal of hospital board of trustees from medical malpractice claim because the "allegations in the complaint linking the members of the board of trustees with the tortious act [were] legally insufficient to hold them liable for the wrongs alleged"). In short, "[b]ecause [Plaintiff] has not pled *facts* to suggest that [the individual Defendants] had any direct or personal involvement in [Snap's] alleged wrongful acts, the [] Complaint fails to state a claim against them as individual defendants." *Scurmont LLC v. Firehouse Rest. Grp., Inc.*, 2010 WL 11433199, at *16 (D.S.C. May 19, 2010) (emphasis added).

Plaintiff's theory seems to be that corporate executives can be named as individual defendants any time the company is sued, based on a conclusory accusation that they "directed" the tortious conduct. (Compl. ¶ 5.) This is not the law. *Rowe*, 321 S.C. at 369. The claims against Spiegel and White should therefore be dismissed.

---

[4]   Although not determinative of this motion, it is also noteworthy that Emily White was not acting as an agent of Snap at the time of the accident, which took place over six years after she had left Snap's employ. (White Aff. ¶ 5.)

C.    **Plaintiff's Strict Liability/Ultra-Hazardous Activity Claim Must Be Dismissed.**

Plaintiff's claim for strict liability/ultrahazardous activity should also be dismissed. "In South Carolina, the state supreme court has narrowly circumscribed the classes of activities that qualify as 'ultra-hazardous' and subject the party conducting them to strict liability." *Winley v. Int'l Paper Co.*, 2012 WL 13047989, at *11 (D.S.C. Oct. 23, 2012). Ultra-hazardous activities include (a) "a high degree of risk of some harm to the person, land or chattels of others"; (b) a "likelihood that the harm that results from it will be great"; (c) an "inability to eliminate the risk by the exercise of reasonable care"; (d) the "extent to which the activity is not a matter of common usage"; (e) the "inappropriateness of the activity to the place where it is carried on;" and (f) the "extent to which its value to the community is outweighed by its dangerous attributes." Restatement (Second) of Torts sec. 520; *see also Ravan*, 315 S.C. at 462 (referring to Restatement factors in determining whether activities were "abnormally dangerous"). For example, blasting has previously been held to constitute an ultrahazardous activity. *Wallace v. A.H. Guion & Co.*, 237 S.C. 349 (1960) (adopting view of *Restatement of Torts* that blasting is ultrahazardous and subject to strict liability). But the Fourth Circuit has previously rejected attempts to expand the ultra-hazardous-liability doctrine, even to activities like the disposal or reprocessing of hazardous chemical waste because "in the absence of guidance from South Carolina's courts or legislature, we as a federal tribunal refuse to sanction such an extension of the state's strict liability doctrine . . . ." *Shockley v. Hoechst Celanese Corp.*, 1993 WL 241179, at *5 (4th Cir. Jun. 28, 1993) (per curiam).

Here, Plaintiff provides no allegation that would justify applying this narrow doctrine to the provision of Snapchat—an app used by hundreds of millions of users across the world every day—or the Speed Filter. The Amended Complaint is entirely bereft of facts tending to plausibly

suggest that Defendants' activities in providing Snapchat to users were "ultrahazardous." This claim should be dismissed with prejudice. *See Winley*, 2012 WL 13047989, at *11 (granting motion to dismiss claim for ultra-hazardous activity with prejudice).

## CONCLUSION

Before amending their Complaint, Plaintiff had the benefit of a full briefing on Defendants' prior motion to dismiss, Plaintiff's own motion for jurisdictional discovery, and an opportunity to file the Amended Complaint. Nevertheless, the Amended Complaint does not – and cannot – remedy the fundamental problems. Plaintiff's theory is that Snap's advertising business makes Snap – and its corporate officers – subject to personal jurisdiction in South Carolina, even though the Speed Filter feature that was allegedly implicated in the car crash was unrelated to Defendants' advertising business. And there are still no concrete allegations tying anyone's use of the Speed Filter to the driver's decision to drive recklessly. For the foregoing reasons, Defendants request the Court grant this motion and dismiss Plaintiff's Amended Complaint for lack of jurisdiction, or, alternatively, dismiss Plaintiff's Amended Complaint for failure to state a claim, without further leave to amend. *See Cozzarelli v. Inspire Pharmaceuticals, Inc.*, 549 F.3d 618, 630-31 (4th Cir. 2008) (affirming dismissal with prejudice when "it is clear that amendment would be futile in light of the fundamental deficiencies in plaintiffs' theory of liability").


Dated: March 29, 2024                           Respectfully submitted,
Myrtle Beach, South Carolina

                                                */s/ Wesley T. Moran*
                                                G. Mark Phillips (Federal Bar No. 3051)
                                                Nelson Mullins Riley & Scarborough LLP
                                                151 Meeting Street, Sixth Floor
                                                Charleston, South Carolina 29401
                                                Tel.: (843) 853-5200
                                                Fax: (842) 722-8700
                                                mark.phillips@nelsonmullins.com

Wesley T. Moran (Federal Bar No. 12797)
Nelson Mullins Riley & Scarborough LLP
Pinnacle Corporate Center, Suite 300
3751 Robert M. Grissom Parkway
Myrtle Beach, South Carolina 29577
Tel.: (843) 448-3500
Fax: (843) 448-3437
wes.moran@nelsonmullins.com

Dated: March 29, 2024                    Respectfully submitted,
Irvine, California

                                        */s/ Reuben C. Cahn*
                                        Jennifer L. Keller (admitted *Pro Hac Vice*)
                                        Reuben C. Cahn (admitted *Pro Hac Vice*)
                                        Keller/Anderle LLP
                                        18300 Von Karman Ave., Suite 930
                                        Irvine, California 92612
                                        Tel.: (949) 476-8700
                                        Fax: (949) 476-0900
                                        jkeller@kelleranderle.com
                                        rcahn@kelleranderle.com

                                        Counsel for Defendants SNAP INC., d/b/a
                                        SNAPCHAT, INC., EVAN SPIEGEL, and EMILY
                                        WHITE